

## James M. Goff II, P.C.
### Attorneys and Counselors at Law

James M. Goff II, Esq.
jgoff@jamesgofflaw.com

M. Donette Williams, Esq.
dwilliams@jamesgofflaw.com

## FACSIMILE TRANSMISSION

**Transmit to:** **Jay C. Paul, Esquire**

**Fax No.:** **(804) 668-5329**

**Date:** **February 5, 2020**

**In Re:** **Payne v. Payne**

**From:** **James M. Goff II, Esquire**

**Number of pages, including cover sheet: Twenty-Two (22)**

**Comment(s): Please see the attached communication.**

The information contained in this transmission is attorney privileged and confidential. It is intended for the use of the individual or entity named above. If the reader is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this transmittal is strictly prohibited. If you receive this transmission in error, please immediately notify the sender at (804) 706-9400 and return the original transmission to the address noted above via the United States Postal Service. Thank you for your cooperation.

10310 Memory Lane, Suite 2C | Post Office Box 313 | Chesterfield, Virginia 23832
Telephone: (804) 706-9400 | Facsimile: (804) 706-9402 | www.jamesgofflaw.com



**James M. Goff II, P.C.**
Attorneys and Counselors at Law

James M. Goff II, Esq.
jgoff@jamesgofflaw.com

M. Donette Williams, Esq.
dwilliams@jamesgofflaw.com

February 5, 2020

## IMMEDIATE ATTENTION REQUIRED

**DELIVERED BY HAND**
Wendy S. Hughes, Clerk
Chesterfield Circuit Court
9500 Courthouse Road
Post Office Box 125
Chesterfield, Virginia 23832

RE:     <u>Thomas Clifford Payne v. Cheryl Cibula Payne</u>
        Case No. CL16-2435-00

Dear Ms. Hughes:

Pursuant to Judge Robbins' request, enclosed herewith please find an Amended Motion to Rehear and Reconsider to be filed with the above referenced matter in your court.

Please present this Amended Motion to Judge Robbins at your earliest convenience, as time is of the essence to grant the Order to Stay the Final Decree entered on January 15, 2020.

As always, thank you for your generous assistance in this matter.

Very truly yours,

James M. Goff II

JMGII:mdw
Enclosure
cc:     Thomas C. Payne
        Jay C. Paul, Esquire

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR THE COUNTY OF CHESTERFIELD

**THOMAS CLIFFORD PAYNE,**                                                    **Plaintiff,**

**v.**                                         **Case No. CL16-2435-00**

**CHERYL CIBULA PAYNE,**                                                  **Defendant.**

### <u>AMENDED MOTION TO REHEAR AND RECONSIDER</u>

COMES NOW, the Plaintiff, Thomas Clifford Payne, by his counsel, and moves this

Court to rehear and/or reconsider issues of equitable distribution and attorney's fees, respectfully

stating as follows:

1.     That this Court entered a Final Decree consistent with its October 23, 2019 letter

opinion on January 15, 2020.

2.     That counsel for the Plaintiff, James M. Goff II, Esquire, received notice by mail

of the Defendant's Chapter 13 bankruptcy filing of January 31, 2020 (Exhibit A).

3.     That the Defendant's bankruptcy filing will materially affect this Court's

equitable distribution award as set forth in the Final Decree entered January 15, 2020.

4.     That the Court's ruling was based on the evidence submitted by the parties as to

the marital assets and liabilities, so that each party would receive their fair and equitable share.

5.     That in said bankruptcy filing, the Defendant identified a bank account with Fort

Lee Credit Union ending 0018 which was not disclosed the Plaintiff or his counsel throughout

the course of litigation.

6.     That the Court's in its letter ruling dated October 25, 2019, specifically noted the

Defendant, "secreted finances, moved money outside the scope of the martial accounts and

represented that she had only one checking account." *Page 4, Section 5; Letter Ruling dated*

*October 25, 2019* (Exhibit B).

7.     That the Defendant should be required to produce any and all information regarding this after discovered bank account to the Plaintiff to ensure all evidence was properly before the Court to determine issues of equitable distribution between the parties.

8.     That your Plaintiff's has a good faith belief that the bankruptcy filing by the Defendant was initiated prior to entry of the Final Decree of divorce entered January 15, 2020, in an effort to avoid the Court's balancing of the equities between the parties in this matter.

9.     That your Plaintiff is entitled to a restructuring of the marital assets and debts of the marriage.  Specifically, given the now known intention of the Defendant to circumvent the Order of this Court, certain assets and debts can be applied to offset in order to obtain equity between the parties as this Court intended to in its letter ruling of October 25, 2019, incorporated into the Final Decree of divorce entered January 15, 2020.

WHEREFORE, your Plaintiff, Thomas Clifford Payne, by his counsel, prays that this Court grant a rehearing for the reasons enumerated herein, and for such other and further relief as this Court shall deem meet and necessary.

THOMAS CLIFFORD PAYNE

By: _____
                 Counsel

James M. Goff II, Esquire
VSB No. 35439
M. Donette Williams, Esquire
VSB No. 93998
JAMES M. GOFF II, P.C.
10310 Memory Lane, Suite 2-C
Post Office Box 313
Chesterfield, Virginia 23832
Telephone: (804) 706-9400
Facsimile: (804) 706-9402
jgoff@jamesgofflaw.com
www.jamesgofflaw.com

02/05/2020 16:38 FAX 8047008403    JAMES M. GOFF II    ☑ 005/022

## CERTIFICATE

I hereby certify that a true and correct copy of the foregoing Amended Motion to Rehear and Reconsider was sent via facsimile and mailed, first class postage prepaid, to Jay C. Paul, Esquire, P. O. Box 1193, Prince George, Virginia 23875 on this 5th day of February, 2020.

James M. Goff II

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA

20-30524

CHAPTER 13 PLAN
AND RELATED MOTIONS

Name of Debtor(s): Cheryl Glinda Payne Case No:

This plan, dated January 31, 2020, is:

■ the first Chapter 13 plan filed in this case.
☐ a modified Plan, which replaces the ☐ confirmed or ☐ unconfirmed Plan dated ____.

Date and Time of Modified Plan Confirmation Hearing:

Place of Modified Plan Confirmation Hearing:
U.S. Bankruptcy Court 701 E. Broad St., Richmond, VA 23219

The Plan provisions modified by this filing are:

Creditors affected by this modification are:

1. Notices

To Creditors:

Your rights may be affected by this plan. Your claim may be reduced, modified, or eliminated. You should read this plan carefully and discuss it with your attorney if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.

If you oppose the plan's treatment of your claim or any provision of this plan, you or your attorney must file an objection to confirmation at least 7 days before the date set for the hearing on confirmation, unless otherwise ordered by the Bankruptcy Court.

(1) Richmond and Alexandria Divisions:
The Bankruptcy Court may confirm this plan without further notice if no objection to confirmation is filed.
(2) Norfolk and Newport News Divisions: a confirmation hearing will be held even if no objections have been filed.
(a) A scheduled confirmation hearing will not be convened when:
(1) an amended plan is filed prior to the scheduled confirmation hearing; or
(2) a consent resolution to an objection to confirmation anticipating the filing of an amended plan and the objecting party removes the scheduled confirmation hearing prior to 5:00 pm on the last business day before the confirmation hearing.

In addition, you may need to file a timely proof of claim in order to be paid under any plan.

The following matters may be of particular importance.

Debtors must check one box on each line to state whether or not the plan includes each of the following items. If an item is checked as "Not Included" or if both boxes are checked, the provision will be ineffective if set out later in the plan.

| | | | |
|---|---|---|---|
| A. | A limit on the amount of a secured claim, set out in Section 4.A which may result in a partial payment or no payment at all to the secured creditor | ☐ Included | ■ Not included |
| B. | Avoidance of a judicial lien or nonpossessory, nonpurchase-money security interest, set out in Section 8.A | ☐ Included | ■ Not included |
| C. | Nonstandard provisions, set out in Part 12 | ☐ Included | ■ Not included |

2. Funding of Plan. The debtor(s) propose to pay the Trustee the sum of $ 208.00 per month for 36 months. Other payments to the Trustee are as follows:

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com Best Case Bankruptcy

20-30524

The total amount to be paid into the Plan is $ 7,488.00.

3. Priority Creditors. The Trustee shall pay allowed priority claims in full unless the creditor agrees otherwise.

A. Administrative Claims under 11 U.S.C. § 1326.

1. The Trustee will be paid the percentage fee fixed under 28 U.S.C. § 586(e), not to exceed 10% of all sums received under the plan.

2. Check one box:

■ Debtor(s)' attorney has chosen to be compensated pursuant to the "no-look" fee under Local Bankruptcy Rule 2016-1(C)(1)(a) and (C)(3)(a) and will be paid $ 4,778.00, balance due of the total fee of $ 5,414.00, concurrently with or prior to the payments to remaining creditors.

☐ Debtor(s)' attorney has chosen to be compensated pursuant to Local Bankruptcy Rule 2016-1(C)(1)(c)(3) and must submit applications for compensation as set forth in the Local Rules.

B. Claims under 11 U.S.C. § 507.

The following priority creditors will be paid by deferred cash payments pro rata with other priority creditors or in monthly installments as below, except that allowed claims pursuant to 11 U.S.C. § 507(a)(1) will be paid pursuant to 3.C below:

| Creditor | Type of Priority | Estimated Claim | Payment and Term |
|---|---|---|---|
| Commonwealth of Virginia | Taxes and certain other debts | 500.00 | Prorata 6 months |

C. Claims under 11 U.S.C. § 507(a)(1).

The following priority creditors will be paid prior to other priority creditors but concurrently with administrative claims above.

| Creditor | Type of Priority | Estimated Claim | Payment and Term |
|---|---|---|---|
| -NONE- | | | |

4. Secured Creditors: Motions to Value Collateral ("Cramdown"), Collateral being Surrendered, Adequate Protection Payments, and Payment of certain Secured Claims.

A. Motions to Value Collateral (other than claims protected from "cramdown" by 11 U.S.C. § 1322(b)(2) or by the final paragraph of 11 U.S.C. § 1325(a)). Unless a written objection is timely filed with the Court, the Court may grant the debtor(s)' motion to value collateral as set forth herein.

This section deals with valuation of certain claims secured by real and/or personal property, other than claims protected from "cramdown" by 11 U.S.C. § 1322(b)(2) [real estate which is debtor(s)' principal residence] or by the final paragraph of 11 U.S.C. § 1325(a) [motor vehicles purchased within 910 days or any other thing of value purchased within 1 year before filing bankruptcy], in which the replacement value is asserted to be less than the amount owing on the debt. Such debts will be treated as secured claims only to the extent of the replacement value of the collateral. That value will be paid with interest as provided in sub-section D of this section. You must refer to section 4(D) below to determine the interest rate, monthly payment and estimated term of repayment of any "crammed down" loan. The deficiency balance owed on such a loan will be treated as an unsecured claim to be paid only to the extent provided in section 5 of the Plan. The following secured claims are to be "crammed down" to the following values:

| Creditor | Collateral | Purchase Date | Est. Debt Bal. | Replacement Value |
|---|---|---|---|---|
| -NONE- | | | | |

B. Real or Personal Property to be Surrendered.

Upon confirmation of the Plan, or before, the debtor(s) will surrender his/her/their interest in the collateral securing the claims of the following creditors in satisfaction of the secured portion of such creditors' allowed claims. To the extent that the collateral does not satisfy the claim, any timely filed deficiency claim to which the creditor is entitled may be paid as a non-priority unsecured claim. Confirmation of the Plan shall terminate the automatic stay under §§ 362(a) and 1301(a) as to the interest of the debtor(s), any co-debtor(s) and the estate in the collateral.

| Creditor | Collateral Description | Estimated Value | Estimated Total Claim |
|---|---|---|---|
| -NONE- | | | |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com Best Case Bankruptcy

20-30524

C. Adequate Protection Payments.

The debtor(s) propose to make adequate protection payments required by 11 U.S.C. § 1326(a) or otherwise upon claims secured by personal property, until the commencement of payments provided for in sections 4(D) and/or 7(B) of the Plan, as follows:

| Creditor | Collateral | Adeq. Protection Monthly Payment | To Be Paid By |
|---|---|---|---|
| -NONE- | | | |

Any adequate protection payment upon an unexpired lease of personal property assumed by the debtor(s) pursuant to section 7(B) of the Plan shall be made by the debtor(s) as required by 11 U.S.C. § 1326(a)(1)(B) (payments coming due after the order for relief).

D. Payment of Secured Claims on Property Being Retained (except those loans provided for in section 6 of the Plan):

This section deals with payment of debts secured by real and/or personal property [including short term obligations, judgments, tax liens and other secured debts]. After confirmation of the Plan, the Trustee will pay to the holder of each allowed secured claim, which will be either the balance owed on the indebtedness or, where applicable, the collateral's replacement value as specified in sub-section A of this section, whichever is less, with interest at the rate provided below, the monthly payment specified below until the amount of the secured claim has been paid in full. Upon confirmation of the Plan, the valuation specified in sub-section A and interest rate shown below will be binding unless a timely written objection to confirmation is filed with and sustained by the Court.

| Creditor | Collateral | Approx. Bal. of Debt or "Crammed Down" Value | Interest Rate | Monthly Payment & Est. Term |
|---|---|---|---|---|
| -NONE- | | | | |

E. Other Debts.

Debts which are (i) mortgage loans secured by real estate which is the debtor(s)' principal residence, or (ii) other long term obligations, whether secured or unsecured, to be continued upon the existing contract terms with any existing default in payments to be cured pursuant to 11 U.S.C. § 1322(b)(5), are provided for in section 6 of the Plan.

5. Unsecured Claims.

A. Not separately classified. Allowed non-priority unsecured claims shall be paid pro rata from any distribution remaining after disbursement to allowed secured and priority claims. Estimated distribution is approximately 1 %. The dividend percentage may vary depending on actual claims filed. If this case were liquidated under Chapter 7, the debtor(s) estimate that unsecured creditors would receive a dividend of approximately 0 %.

B. Separately classified unsecured claims.

| Creditor | Basis for Classification | Treatment |
|---|---|---|
| -NONE- | | |

6. Mortgage Loans Secured by Real Property Constituting the Debtor(s)' Principal Residence; Other Long Term Payment Obligations, whether secured or unsecured, to be continued upon existing contract terms; Curing of any existing default under 11 U.S.C. § 1322(b)(5).

A. Debtor(s) to make regular contract payments; arrears, if any, to be paid by Trustee. The creditors listed below will be paid by the debtor(s) pursuant to the contract without modification, except that arrearages, if any, will be paid by the Trustee either pro rata with other secured claims or on a fixed monthly basis as indicated below, without interest unless an interest rate is designated below for interest to be paid on the arrearage claim and such interest is provided for in the loan agreement. A default on the regular contract payments on the debtor(s) principal residence is a default under the terms of the plan.

| Creditor | Collateral | Regular Contract Payment | Estimated Arrearage | Arrearage Interest Rate | Estimated Cure Period | Monthly Arrearage Payment |
|---|---|---|---|---|---|---|

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com Best Case Bankruptcy

20-30524

| Creditor | Collateral | Regular Contract Payment | Estimated Arrearage | Arrearage Interest Rate | Estimated Cure Period | Monthly Arrearage Payment |
|---|---|---|---|---|---|---|
| -NONE- | | | | | | |

B. Trustee to make contract payments and cure arrears, if any. The Trustee shall pay the creditors listed below the regular contract monthly payments that come due during the period of this Plan, and pre-petition arrearages on such debts shall be cured by the Trustee either pro rata with other secured claims or with monthly payments as set forth below.

| Creditor | Collateral | Regular Contract Payment | Estimated Arrearage | Interest Rate on Arrearage | Monthly Payment on Arrearage & Est. Term |
|---|---|---|---|---|---|
| -NONE- | | | | | |

C. Restructured Mortgage Loans to be paid fully during term of Plan. Any mortgage loan against real estate constituting the debtor(s)' principal residence upon which the last scheduled contract payment is due before the final payment under the Plan is due shall be paid by the Trustee during the term of the Plan as permitted by 11 U.S.C. § 1322(c)(2) with interest at the rate specified below as follows:

| Creditor | Collateral | Interest Rate | Estimated Claim | Monthly Payment & Term |
|---|---|---|---|---|
| -NONE- | | | | |

7. Unexpired Leases and Executory Contracts. The debtor(s) move for assumption or rejection of the executory contracts, leases and/or timeshare agreements listed below.

A. Executory contracts and unexpired leases to be rejected. The debtor(s) reject the following executory contracts:

| Creditor | Type of Contract |
|---|---|
| -NONE- | |

B. Executory contracts and unexpired leases to be assumed. The debtor(s) assume the following executory contracts. The debtor(s) agree to abide by all terms of the agreement. The Trustee will pay the pre-petition arrearages, if any, through payments made pro rata with other priority claims or on a fixed monthly basis as indicated below.

| Creditor | Type of Contract | Arrearage | Monthly Payment for Arrears | Estimated Cure Period |
|---|---|---|---|---|
| -NONE- | | | | |

8. Liens Which Debtor(s) Seek to Avoid.

A. The debtor(s) move to avoid liens pursuant to 11 U.S.C. § 522(f). The debtor(s) move to avoid the following judicial liens and non-possessory, non-purchase money liens that impair the debtor(s)' exemptions. Unless a written objection is timely filed with the Court, the Court may grant the debtor(s)' motion and cancel the creditor's lien. If an objection is filed, the Court will hear evidence and rule on the motion at the confirmation hearing.

| Creditor | Collateral | Exemption Basis | Exemption Amount | Value of Collateral |
|---|---|---|---|---|
| -NONE- | | | | |

B. Avoidance of security interests or liens on grounds other than 11 U.S.C. § 522(f). The debtor(s) have filed or will file and serve separate adversary proceedings to avoid the following liens or security interests. The creditor should review the notice or summons accompanying such pleadings as to the requirements for opposing such relief. The listing here is for information purposes only.

| Creditor | Type of Lien | Description of Collateral |
|---|---|---|
| -NONE- | | |

EXHIBIT A

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com Best Case Bankruptcy

Case 20-30524  Doc 2  Filed 01/31/20  Entered 01/31/20 15:50:00  Desc Main
Document  Page 5 of 12

Case 20-30524  Doc 2  Filed 01/31/20  Entered 01/31/20 15:50:00  Desc Main
Document  Page 6 of 12

20-30524

Case 20-30524  Doc 2  Filed 01/31/20  Entered 01/31/20 15:50:00  Desc Main
Document  Page 7 of 12

20-30524

Case 20-30524  Doc 2  Filed 01/31/20  Entered 01/31/20 15:50:00  Desc Main
Document  Page 8 of 12

20-30524

Official Form 106I

Schedule I: Your Income

20-30524

Debtor 1 Cheryl Cibile Payne

Debtor 2 (Spouse, if filing)

United States Bankruptcy Court for the: EASTERN DISTRICT OF VIRGINIA

Case number (If known)

Check if this is:
☐ An amended filing
☐ A supplement showing postpetition chapter 13 expenses as of the following date:
MM/DD/YYYY

## Official Form 106J
## Schedule J: Your Expenses

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1: Describe Your Household**

1. Is this a joint case?
   ■ No. Go to line 2.
   ☐ Yes. Does Debtor 2 live in a separate household?
      ☐ No
      ☐ Yes. Debtor 1 must file Official Form 106J-2, Expenses for Separate Household of Debtor 2.

2. Do you have dependents? ☐ No
   Do not list Debtor 1 and Debtor 2. ■ Yes. Fill out this information for each dependent.
   Do not state the dependents names.

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| | | ☐ No |
| Daughter | 11 | ■ Yes |
| | | ☐ No |
| Daughter | 17 | ■ Yes |
| | | ☐ No |
| | | ☐ Yes |
| | | ☐ No |
| | | ☐ Yes |

3. Do your expenses include expenses of people other than yourself and your dependents? ■ No ☐ Yes

**Part 2: Estimate Your Ongoing Monthly Expenses**

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental Schedule J, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on Schedule I: Your Income (Official Form 106I.) Your expenses

| | | |
|---|---|---|
| 4. The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot. | 4. $ | 0.00 |
| If not included in line 4: | | |
| 4a. Real estate taxes | 4a. $ | 0.00 |
| 4b. Property, homeowner's, or renter's insurance | 4b. $ | 0.00 |
| 4c. Home maintenance, repair, and upkeep expenses | 4c. $ | 0.00 |
| 4d. Homeowner's association or condominium dues | 4d. $ | 0.00 |
| 5. Additional mortgage payments for your residence, such as home equity loans | 5. $ | 0.00 |

Debtor 1 Cheryl Cibile Payne Case number (if known) 20-30524

| | | |
|---|---|---|
| 6. Utilities: | | |
| 6a. Electricity, heat, natural gas | 6a. $ | [illegible] |
| 6b. Water, sewer, garbage collection | 6b. $ | 37.00 |
| 6c. Telephone, cell phone, Internet, satellite, and cable services | 6c. $ | [illegible] |
| 6d. Other. Specify: security system | 6d. $ | 37.00 |
| 7. Food and housekeeping supplies | 7. $ | [illegible] |
| 8. Childcare and children's education costs | 8. $ | [illegible] |
| 9. Clothing, laundry, and dry cleaning | 9. $ | 0.00 |
| 10. Personal care products and services | 10. $ | 30.00 |
| 11. Medical and dental expenses | 11. $ | [illegible] |
| 12. Transportation. Include gas, maintenance, bus or train fare. Do not include car payments. | 12. $ | 160.00 |
| 13. Entertainment, clubs, recreation, newspapers, magazines, and books | 13. $ | 0.00 |
| 14. Charitable contributions and religious donations | 14. $ | 0.00 |
| 15. Insurance. Do not include insurance deducted from your pay or included in lines 4 or 20. | | |
| 15a. Life insurance | 15a. $ | 18.00 |
| 15b. Health insurance | 15b. $ | 0.00 |
| 15c. Vehicle insurance | 15c. $ | [illegible] |
| 15d. Other insurance. Specify: | 15d. $ | 0.00 |
| 16. Taxes. Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: | 16. $ | 0.00 |
| 17. Installment or lease payments: | | |
| 17a. Car payments for Vehicle 1 | 17a. $ | 0.00 |
| 17b. Car payments for Vehicle 2 | 17b. $ | 0.00 |
| 17c. Other. Specify: | 17c. $ | 0.00 |
| 17d. Other. Specify: | 17d. $ | 0.00 |
| 18. Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, Schedule I, Your Income (Official Form 106I). | 18. $ | 0.00 |
| 19. Other payments you make to support others who do not live with you. Specify: | 19. $ | 0.00 |
| 20. Other real property expenses not included in lines 4 or 5 of this form or on Schedule I: Your Income. | | |
| 20a. Mortgages on other property | 20a. $ | 0.00 |
| 20b. Real estate taxes | 20b. $ | 0.00 |
| 20c. Property, homeowner's, or renter's insurance | 20c. $ | 0.00 |
| 20d. Maintenance, repair, and upkeep expenses | 20d. $ | 0.00 |
| 20e. Homeowner's association or condominium dues | 20e. $ | 0.00 |
| 21. Other: Specify: | 21. +$ | 0.00 |
| 22. Calculate your monthly expenses | | |
| 22a. Add lines 4 through 21. | $ | 1,631.33 |
| 22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | $ | |
| 22c. Add line 22a and 22b. The result is your monthly expenses. | $ | 1,631.33 |
| 23. Calculate your monthly net income. | | |
| 23a. Copy line 12 (your combined monthly income) from Schedule I. | 23a. $ | 1,549.00 |
| 23b. Copy your monthly expenses from line 22c above. | 23b. -$ | 1,631.33 |
| 23c. Subtract your monthly expenses from your monthly income. The result is your monthly net income. | 23c. $ | -82.33 |

24. Do you expect an increase or decrease in your expenses within the year after you file this form? For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?
■ No.
☐ Yes. Explain here:

20-30524

Best Egg/sst
Attn: Bankruptcy
4315 Pickett Rd
St Joseph, MO 64503

Chase Card Services
Attn: Bankruptcy
Po Box 15298
Wilmington, DE 19850

Citibank
Citicorp Credit Srvs/Centralized Bk dept
Po Box 790034
St Louis, MO 63179

Citizens One
One Citizens Plaza
Providence, RI 02903

Commonwealth of Virginia
Dept. of Taxation
PO Box 2369
Richmond, VA 23218-2369

Discover Financial
Attn: Bankruptcy Department
Po Box 15316
Wilmington, DE 19850

Marcus by Goldman Sachs
Attn: Bankruptcy
Po Box 45400
Salt Lake City, UT 84145

Nelnet
Attn: Bankruptcy Claims
Po Box 82505
Lincoln, NE 68501

Pamela Wealand
513 Forest Ave., Ste. 203
Henrico, VA 23229

20-30524

Thomas Clifford Payne
and James M. Goff, II, Esq.
10310 Memory Ln., #2C
Chesterfield, VA 23832

Thomas Clifford Payne
105 Oakwood Ave.
Hopewell, VA 23860

Thomas Payne
105 Oakwood Ave.
Hopewell, VA 23860

Wells Fargo Bank
Attn: Bankruptcy Dept
Po Box 6429
Greenville, SC 29606

# Commonwealth of Virginia

JUDGES
T.J. HAULER
FREDERICK G. ROCKWELL, III
STEVEN C. MCCALLUM
LYNN S. BRICE
DAVID E. JOHNSON
EDWARD A. ROBBINS, JR.

JOHN F. DAFFRON, JR.
WILLIAM R. SHELTON
MICHAEL C. ALLEN
HERBERT C. GILL, JR.
HAROLD W. BURGESS, JR.
RETIRED



COUNTY OF CHESTERFIELD
CITY OF COLONIAL HEIGHTS

JUDGES' CHAMBERS
POST OFFICE BOX 57
CHESTERFIELD, VIRGINIA 23832-0057
(804) 748-1333

TRICIA D. MULLER
ADMINISTRATOR OF JUDICIAL OPERATIONS

## TWELFTH JUDICIAL CIRCUIT

October 23, 2019

James M. Goff II, Esquire
JAMES M. GOFF II, P.C.
10310 Memory lane, Suite 2-C
Chesterfield, Virginia 23832

Jay C. Paul, Esquire
P.O. Box 1193
Prince George, Virginia 23875

Re: *Thomas Clifford Payne v. Cheryl Cibula Payne*, CL16-2435

Dear Counsel:

Enclosed please find Judge Hauler's Letter Opinion for the above referenced matter.

Sincerely,



Savannah Altherr, Law Clerk to the
Honorable T.J. Hauler

Enclosure

**EXHIBIT B**

# Commonwealth of Virginia

JUDGES
T.J. HAULER
FREDERICK G. ROCKWELL, III
STEVEN C. MCCALLUM
LYNN S. BRICE
DAVID E. JOHNSON
EDWARD A. ROBBINS, JR.

JOHN F. DAFFRON, JR.
WILLIAM R. SHELTON
MICHAEL C. ALLEN
HERBERT C. GILL, JR.
HAROLD W. BURGESS, JR.
RETIRED



COUNTY OF CHESTERFIELD
CITY OF COLONIAL HEIGHTS

JUDGES' CHAMBERS
POST OFFICE BOX 57
CHESTERFIELD, VIRGINIA 23832-0057
(804) 748-1339

TRICIA D. MULLER
ADMINISTRATOR OF JUDICIAL OPERATIONS

**TWELFTH JUDICIAL CIRCUIT**

October 23, 2019

James M. Goff II, Esquire
JAMES M. GOFF II, P.C.
10310 Memory lane, Suite 2-C
Chesterfield, Virginia 23832

Jay C. Paul, Esquire
P.O. Box 1193
Prince George, Virginia 23875

Re: *Thomas Clifford Payne v. Cheryl Cibula Payne, CL16-2435*

Dear Counsel:

This matter came before the Court on September 9, 2019 for a hearing for final argument.

After studying the testimony and exhibits submitted in this matter and reviewing the pertinent caselaw, the Court is prepared to rule on the grounds for divorce. After announcing its decision regarding the grounds for divorce, the Court will proceed to the issues of grounds, equitable distribution, custody and visitation, child support, spousal support, and attorney's fees.

### PROCEDURAL BACKGROUND

Mr. Payne filed a Complaint for divorce, through counsel, on August 29, 2016 seeking a divorce *a mensa et thoro* on the grounds of desertion, with leave to merge the said divorce into a divorce *a vinculo matrimonii* at the expiration of the statutory period.

Mr. Payne also requested joint legal and primary physical custody of the parties' minor children, visitation, and equitable distribution of marital property.

Through counsel, Ms. Payne Answered and filed a Counter Complaint on September 15, 2016. She denied the Plaintiff's allegation of desertion and moved for divorce *a mensa et thoro* to merge into a divorce *a vinculo matrimonii* based on grounds of cruelty and desertion. She also requested sole custody of the minor children, child and spousal support, exclusive possession of

**Page 1 of 12**

the marital residence, equitable distribution, attorney's fees, and that the Court enjoin and restrain the Plaintiff from dissipating marital assets.

Plaintiff Answered the Counter Complaint on September 27, 2016, denying Defendant's allegations. A *pendente lite* hearing was held on October 14, 2016 and *pendente lite* Order consistent with the ruling of the October hearing was entered on February 1, 2017. A second *pendente lite* hearing was held on April 3, 2017 and an Order consistent with the ruling from that hearing was entered on April 28, 2017. A third *pendente lite* hearing was held on September 15, 2017 and an Order consistent with the ruling from that hearing was entered on November 7, 2017. A Domestic Relations Pretrial Order was entered on June 3, 2019.

The Court heard final argument on September 9, 2019 and received and reviewed evidence via *de benne esse* depositions dated July 26, 2019, August 4, 2019, August 7, 2019, as well as the transcript and exhibits of the final hearing on September 9, 2019.

### GROUNDS FOR DIVORCE

Plaintiff and Defendant were married on May 8, 1999 in Chesterfield, Virginia. T. Payne Dep. 4: 12-14, Aug. 4, 2019. There are two children of the marriage, Madelyn Rebecca Payne and Jenna Elizabeth JeeAH Payne. *Id.* at 5:. 3-12. Madelyn, was born to the parties during the marriage on March 8, 2002. *Id.* at 5: 6-9. Jenna was born on June 20, 2008 and was adopted by the parties. *Id.* at 5:10-16. The parties last cohabited at 7901 Dunnottar Court in Chesterfield, Virginia 23838. *Id.* at 5:1-2. The parties separated on July 15, 2016.

Plaintiff and Defendant each sought divorce based on grounds of desertion. Additionally, Defendant sought divorce on alternative grounds of cruelty. The Court finds that each party failed to meet its respective burden of proof sufficient to find for a divorce based on cruelty or desertion.

With regard to fault, Defendant's counsel briefly argued recrimination. Hr'g. Tr. 4:12-18, Sept. 9, 2019. However, evidence to determine fault with regard to recrimination was insufficient for such a determination.

The Court finds that the parties presented sufficient evidence to demonstrate that the appropriate ground for divorce is living separate and apart, with no cohabitation nor interruption in excess of one year.

### EQUITABLE DISTRIBUTION

**I.    STATUTORY FACTORS**

Virginia Code § 20-107.3(E) requires the Court to weigh the following eleven factors to determine the appropriate scheme of equitable distribution:

Page 2 of 12

1. **The contributions, monetary and nonmonetary, of each party to the well-being of the family;**

Plaintiff contributed the entirety of the family's monetary resources for all but the first four years of the 17-year marriage. C. Payne Dep. 5:18-22; 7:13-17, Aug. 7, 2019. Throughout the course of the parties' marriage, Plaintiff was employed as an electrician. Plaintiff regularly worked overtime to support the family. T. Payne Dep. 12:2-19, Aug. 4, 2019. Plaintiff also worked a part-time job during six months of 2008 when he experienced a drop in pay due to the recession. *Id.* at 12:23-25; 13:3-4. From 2009 through the time of separation, Plaintiff worked in excess of 60 hours per week. *Id.* 13:24-25. Additionally, Plaintiff worked more than 12 hours per day, six days per week at Defendant's request for him to engage in working additional overtime. *Id.* at 12:8-19, Aug. 4, 2019.

Despite working six days per week, Plaintiff spent every Sunday, his only day off, with his daughters. *Id.* 9:17-20. He spent time engaging with them in activities that each enjoyed, such as hiking with Madelyn and playing on the trampoline with Jenna. *Id.* at 9: 21-23; 10:1-5.

Defendant worked as an insurance claims adjustor during the first four years of the marriage, but not at all afterwards. C. Payne Dep. 5:18-22; 7:13-17, Aug. 7, 2019. After the birth of their first daughter, Defendant stayed home to take care of their daughter and maintain the household. *Id.* at 8:9-23. The care of the children became Defendant's primary responsibility and the parties decided to home school the children. *Id.* at 12:1-9. Defendant stated that she home schools the children between 5 and 6 hours each day. C. Payne Dep. 127:1-3.

2. **The contributions, monetary and nonmonetary, of each party in the acquisition and care and maintenance of such marital property of the parties;**

While at home, Plaintiff maintained the martial residence by acting as a handyman carpenter. T. Payne Dep. 12:2-19, Aug. 4, 2019. Plaintiff built things and landscaped the property, for example, by creating a fish pond and a large patio for the children's toys. *Id.* at 10:6-16. Plaintiff also repaired the property himself when necessary instead of hiring a third-party contractor. *Id.* at 21:6-11. For example, Plaintiff installed a back-up generator, repaired various plumbing problems, repainted the rooms, and installed an irrigation system in the yard. *Id.* at 21:14-23.

Defendant maintained the household. C. Payne Dep. 8:9-23, Aug. 7, 2019. She also maintained the family's finances during the course of the marriage. C. Payne Dep. 13:4-7, July, 26, 2019. However, Defendant ceased paying mortgage on the marital residence during the course of the litigation, which caused the foreclosure proceedings. *Id.* at 46:1-14. Defendant claims that she did not have the money to pay the mortgage during this time period. During this time period, the mortgage payment was $2,350 per month. C. Payne Dep. 142:10-13, Aug. 4, 2019. During this same time period, Plaintiff was paying Defendant $3,876 per month in support. *Id.* at 143:14-18. Ultimately, Defendant's actions cost the parties the asset of the marital residence and, instead, created $11,624.98 in debt due to defaulting on the mortgage. Pl. Ex. 2, Sep. 9, 2019.

Defendant also failed to care for certain items of marital property after she asked Plaintiff to leave the marital residence. Defendant admits to "junk[ing]" items that possibly belonged Plaintiff by allowing her father and brother to take them to the dump. C. Payne Dep. 53:15-24, August 7, 2019. Defendant did not take inventory of the items or reach out to Plaintiff's attorney to allow Plaintiff the opportunity to retrieve the items. *Id.* at 54: 19-24. Defendant further denied Plaintiff access to the marital residence to retrieve his personal property. C. Payne Dep. 128: 5-6.

After the roof of the marital residence was damaged during a hail storm, Defendant had a contractor inspect the damage. This was assessed at $17,800. C. Payne Dep., 175:23-25, Aug. 4, 2019. After the contractor failed to follow through with repairing the roof, Defendant chose not to contact another contractor for the repair. *Id.* at 174: 2-11. After a second hailstorm, Defendant chose not to have any additional damage assessed. *Id.* at 176: 1-4.

After separation, Defendant hired an electrician to complete $2,700.00 worth of electrical work on the marital residence instead of asking Plaintiff, who is an electrician, to complete the work at no cost. Hr'g Tr. 45:2-17, Sep. 9, 2019. This explains the increase in the Citi card October 2016 statement. *Id.*; T. Payne Dep., Pl. Ex. 8, Aug. 4, 2019.

### 3. The duration of the marriage;

The couple married on May 8, 1999 and separated on July 15, 2016. The duration of the marriage was approximately 17 years and 2 months.

### 4. The ages and physical and mental condition of the parties;

Plaintiff is 50 years old and is in good mental and physical health, other than a diagnosis of high blood pressure. T. Payne Dep. 22:11-18, Aug. 4, 2019.

Defendant is 48 years old. C. Payne Dep. 7:23-24, July 26, 2019. Defendant testified that she has a health condition but has not sought disability for this condition. *Id.* at 8:3-14.

### 5. The circumstances and factors which contributed to the dissolution of the marriage, specifically including any ground for divorce under the provisions of subdivision A (1), (3) or (6) of § 20-91 or § 20-95;

Plaintiff presented evidence that, prior to separation, Defendant secreted finances, moved money outside the scope of the marital accounts and represented that she had only one checking account. C. Payne Dep. 37:8-21, 38:10-17, 39:7-21, 48:13-24, 70:3-16, July 26, 2019.

### 6. How and when specific items of such marital property were acquired;

See "Assets and Debts" discussion below.

### 7. The debts and liabilities of each spouse, the basis for such debts and liabilities, and the property which may serve as security for such debts and liabilities;

' See "Assets and Debts" discussion below.

**8. The liquid or nonliquid character of all marital property;**

All assets subject to division are liquid, with the exception of the personal property and coins.

**9. The tax consequences to each party;**

Defendant testified that she did not file jointly and instead claimed both of the parties' minor children on her 2018 tax returns as dependents. C. Payne Dep. 110:10-15.

**10. The use or expenditure of marital property by either of the parties for a nonmarital separate purpose or the dissipation of such funds, when such was done in anticipation of divorce or separation or after the last separation of the parties; and**

As previously discussed, Defendant failed to pay the mortgage to the marital residence despite living there after having asked Plaintiff to leave the residence. Pl. Ex. 2, Sep. 9, 2019. Her failure to pay the mortgage cost the parties the asset of the marital residence. *Id.* This constituted waste of a marital asset.

Defendant also failed to care for certain items of marital property after she asked Plaintiff to leave the marital residence. Defendant admits to "junk[ing]" items that possibly belonged Plaintiff by allowing her father and brother to take them to the dump. C. Payne Dep. 53:15-24, August 7, 2019. Defendant did not take inventory of the items or reach out to Plaintiff's attorney to allow Plaintiff the opportunity to retrieve the items. *Id.* at 54: 19-24.

**11. Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award.**

Defendant testified that did not have any money with which to make the mortgage payments for the marital residence, which resulted in foreclosure. C. Payne Dep. 115:11-13, Aug. 4, 2019. However, Plaintiff presented evidence that Defendant had a bank balance of $44,000.00 during the time period of foreclosure. T. Payne Dep., Pl. Ex. 12, Aug. 4, 2019.

## II.  ASSETS AND DEBTS

"Property is presumed to be marital if it was obtained by either spouse during the marriage, and before the last separation of the parties unless evidence process that the property is separate." *Luczkovich v. Luczkovich*, 26 Va. App. 702, 715 (1998) (citing Va. Code § 20-107.3(A)(2)). If parties fail to present evidence to determine classification of an item as separate or marital property, then the statutory presumption requires the Court to classify the property as marital.

The parties have agreed that all assets held by the couple are marital, with the exception of Defendant's engagement ring. Hr'g Tr. 25:10-18, Sep. 9, 2019.

RECEIVED 02/05/2020 16:40 FAX 8047085400 JONES GOFF 31 ☑ 015/022

Plaintiff submitted a proposed distribution of property. Pl. Ex. 3, Sep. 9, 2019. Defendant did not submit a proposed distribution form.

The following discussion allocates the parties assets:

1. **Personal Property:**

This is the personal property listed in the Plaintiff's Personal Property list. T. Payne Dep., Pl. Ex. 15, Aug.4, 2019. Plaintiff estimates that this property, minus the cost of Defendant's engagement ring, is valued at $39,927.00. Pl. Ex. 3, Sep. 9, 2019. Defendant provided no estimate of the value of the property listed, but argued that Plaintiff's estimate was an overestimate. Hr'g Tr. 79:15-22, Sep. 9, 2019.

2. **Gold & Silver Coins:**

Defendant purchased gold and silver coins during the course of the marriage. C. Payne Dep. 122: 4-8, Aug. 4, 2019. She testified that these coins were all distributed to the children whenever they lost a tooth. *Id.* at 147:8-16. However, the coins were stored generally in a safe. *Id.* at 147: 24-25. Plaintiff estimated that these gold and silver coins are valued at $10,070.00. T. Payne Dep., Pl. Ex. 16, Aug. 4, 2019. Defendant estimated that these coins are valued at "a little over $4,000.00." Hr'g Tr. 77:19-22, Sep. 9, 2019.

3. **Madelyn's Account:**

Although this account is held in Madelyn's name, Plaintiff presented evidence that Defendant has transferred marital funds into this account and has used it as her own. C. Payne Dep. 39:7-21, 48:13-24, July 26, 2019. Plaintiff presented evidence that the account was valued at $4,921.33 at separation. C. Payne Dep. 101:1-8, Aug. 7, 2019. Plaintiff presented evidence that this account is currently valued at $6,921.29. T. Payne Dep., Pl. Ex. 9, Aug. 7, 2019. Defendant argued that this account is valued at $4,900.00 at the date of separation. Hr'g Tr. 63:2-4, Sep. 9, 2019.

4. **Wells Fargo Account 0606:**

This account is the parties' joint account. Hr'g Tr. 46:14-16. Plaintiff values this account is valued at $1,300.58. Pl. Ex. 3, Sep. 9, 2019.

5. **Insurance Check:**

After a storm damaged the roof of the Marital Residence, the parties' homeowner's insurance company issued a check to cover the repair of the damage. C. Payne Dep. 93:3-5, Aug. 4, 2019. The check was issued in both parties' names in the amount of $17,884.72. C. Payne Dep. 107: 19-22; Pl. Ex. 11, Aug. 4, 2019. Defendant converted this check to her own personal use.

6. **Wells Fargo Defendant's Account**

Defendant testified that this is her only checking account. C. Payne Dep. 48:13-24, July 26, 2019. Plaintiff presented evidence that this account is valued at $75,004.44. Pl. Ex. 11, Aug. 4, 2019.

### 7. Gerdau 401(k)

This is Plaintiff's 401(k) Retirement Savings Plan. T. Payne Dep., Pl. Ex. 3, Aug. 4, 2019. Plaintiff presented evidence that this account is valued at $182,787.44. *Id.* at Pl. Ex. 6.

The following discussion allocates the parties' debts:

### 1. Citi Card:

Plaintiff submitted evidence that the balance of this credit card was $8,699.98 at the date of valuation. Pl. Ex. 9, Aug. 4, 2019.

### 2. Chase Card:

Plaintiff submitted evidence that the balance of this credit card was $12,477.21 at the date of valuation. Pl. Ex. 10, Aug. 4, 2019.

### 3. Default on the Mortgage of the Marital Residence:

After Defendant ceased making payments towards the mortgage of the Marital Residence, the property went into foreclosure. This resulted in a $11,624.98 deficiency on the mortgage. Pl. Ex. 3, Sep. 9, 2019. Plaintiff requested this value to be an offset for him and a zero charge for Defendant.

### 4. Wells Fargo Line of Credit:

This Line of Credit is in both parties' names. T. Payne Dep., Pl. Ex. 8, Aug. 4, 2019. Plaintiff presented evidence that this line of credit has a balance of $2,952.14. *Id.*

### III. EQUITABLE DISTRIBUTION AWARD

After fully considering the evidence presented and factors of § 20-107.3 the Court distributes the parties' assets as follows:

### 1. Personal Property:

In recognition of Plaintiff's proposed distribution and Defendant's final arguments, the Court orders that the personal property is allocated to Defendant. The Court finds that this asset is valued at $39,927.00.

### 2. Gold & Silver Coins:

In recognition of Plaintiff's proposed distribution and Defendant's final arguments, the Court orders that the gold and silver coins are allocated to Defendant. The Court finds that this asset is valued at $10,700.

### 3. Madelyn's Account:

In recognition of Plaintiff's proposed distribution, the Court orders that the value of this account be allocated Defendant. The Court finds that this asset is valued at $6,921.29.

### 4. Wells Fargo Account 0606:

In recognition of Plaintiff's proposed distribution, the Court orders that the value of this account be allocated to Defendant. The Court finds that this asset is valued at $1,300.58

### 5. Gerdau 401(k):

In recognition of Plaintiff's proposed distribution, the Court orders that the value of this account is allocated to Plaintiff. The Court finds that this asset is valued at $182,787.68.

After fully considering the evidence presented and factors of § 20-107.3 the Court distributes the parties' debts as follows:

### 1. Citi Card:

In recognition of Plaintiff's proposed distribution, the Court orders that the value of this account be allocated to Plaintiff. The Court finds that the balance of this card is valued at $8,699.98.

### 2. Chase Card:

In recognition of Plaintiff's proposed distribution, the Court orders that the value of this account be allocated to Plaintiff. The Court finds that the balance of this card is valued at $12,477.21.

### 3. Deficiency on the Mortgage of the Marital Residence:

In recognition of Plaintiff's proposed distribution, the Court orders that the reaming value of the deficiency on the mortgage of the Marital Residence be allocated to Plaintiff. The Court finds that the balance is valued at $5,812.49.

### 4. Wells Fargo Line of Credit:

In recognition of Plaintiff's proposed distribution, the Court orders that the value of this line of credit be allocated to Plaintiff. The Court finds that the balance of this line of credit is valued at $2,952.14.

## CUSTODY AND VISITATION

There are two children of the marriage: Madelyn Rebecca Payne, born March 8, 2002, and Jenna Elizabeth JeeAH Payne, born June 20, 2008. A Pendente Lite Order concerning Custody and Visitation Order was entered by this Court on February 1, 2017 awarding joint legal custody of the parties' minor children to Plaintiff and Defendant. Defendant was awarded primary physical custody. Each party was permitted to have contact with the children by telephone at reasonable times and as the situation may warrant. Plaintiff was entitled to every other weekend visitation with both children, beginning on Fridays at 6:00 p.m. until Sundays at 6:00 p.m. Plaintiff was also entitled to one night per week visitation between 6:00 p.m. and 8:00 p.m. Should the parties be unable to agree on a specific night, the default night was ordered to be Wednesday. Plaintiff was ordered to refrain from alcohol use during the twenty-four hours prior to visitation.

The Court finds that Plaintiff and Defendant shall share joint legal custody of the children. Defendant shall have primary physical custody of the children. Visitation for the Plaintiff shall be in accordance with that outlined above.

## CHILD SUPPORT

The Court holds that child support will be calculated by the statutory guidelines pursuant to Va. Code Ann. § 20-108.2. For the purposes of child support, the Court imputes an income of $45,000 per year to Defendant. This calculation is based on her previous salary as a senior claims adjustor. C. Payne Dep. 136: 9-23, Aug. 4, 2019. Plaintiff's income, based on his 2018 paystubs, is calculated at $118,875.70. T. Payne Dep., Pl. Ex. 4, Aug. 4, 2019. The Court Orders Mr. Goff to compute child support calculations using these figures. The support is not a unitary value. Thus, the child support calculation will change when the oldest child reaches the age of majority, such that the calculation will only be based upon supporting one child. Plaintiff will be afforded credit for all health, dental and vision insurance maintained by him for the benefit of his children.

## SPOUSAL SUPPORT

Defendant requested an award of Spousal Support in Countercomplaint. In determining whether to award spousal support, the Court considered the circumstances and factors that contributed to the dissolution of the marriage. In making its determination as to a specific amount of spousal support, the Court referred to Virginia Code Section 20-107.1(E), which directs the Court to consider the following factors:

1. **The obligations, needs, and financial resources of the parties, including but not limited to income from all pension, profit sharing or retirement plans, of whatever nature**

Plaintiff's Gerdau 401(k) retirement plan is the only retirement plan between the parties.

Page 9 of 12

**2. The standard of living established during the marriage**

During the marriage, the parties established a middle class standard of living.

**3. The duration of the marriage**

The Court incorporates its findings discussed above under Equitable Distribution and Spousal Support.

**4. The age and physical and mental condition of the parties and any special circumstances of the family**

The Court incorporates its findings discussed above under Equitable Distribution and Spousal Support.

**5. The extent to which the age, physical or mental condition or special circumstances of any child of the parties would make it appropriate that a party not seek employment outside of the home**

Such circumstances do not exist in this case. Defendant testified that neither child is disabled. C. Payne Dep. 8:18-21, July 26, 2019.

Defendant is currently pursuing education for a career in closed captioning. C. Payne Dep. 94: 14-17, Aug. 4, 2019. She previously earned a Bachelor's of Science in accounting. C. Payne Dep. 9:14-18. Although Defendant has been unemployed for some time, she testified that she was certified as a CPA in 1998. C. Payne Dep. 9:19-24, July 26, 2019. C. Payne Dep. 9:19-24, July 26, 2019.

**6. The contributions, monetary and nonmonetary, of each party to the well-being of the family**

The Court incorporates its findings discussed above under Equitable Distribution and Spousal Support.

**7. The property interests of the parties, both personal, tangible and intangible**

The Court incorporates its findings discussed above under Equitable Distribution and Spousal Support.

**8. The provisions made with regard to the marital property under Virginia Code section 20-107.3**

The Court incorporates its findings discussed above under Equitable Distribution and Spousal Support.

9. **The earning capacity, including the skills, education and training of the parties and the present employment opportunities for persons possessing such earning capacity**

In determining the earning capacity of a spouse, the Court must base any award on the current circumstances. *Payne v. Payne*, 5 Va. App. 359, 363 (1987). A spouse is obligated to earn as much as she reasonably can to reduce the amount of support needed. *Srinivasan v. Srinivasan*, 10 Va. App. 728, 734 (1990). The finding that a spouse is capable of earning more income than is presently reported must be based on evidence and not on speculation. *Jacobs v. Jacobs*, 219 Va. 993, 995 (1979).

Defendant testified that she was currently pursuing education for a career in closed captioning where she could earn a salary of $40,000.00. C. Payne Dep. 169: 16-21, Aug. 4, 2019. This salary is much lower than the $45,000.00 salary that Defendant had earned while working as a senior claims adjustor. *Id.* at 136: 9-23. Defendant testified that she was no longer pursuing a career as a senior claims adjustor because she did not want to do so. *Id.* at 167:7-15.

10. **The opportunity for, ability of, and the time and costs involved for a party to acquire the appropriate education, training and employment to obtain the skills needed to enhance his or her earning ability**

Defendant testified that she enrolled in an online course through Auburn University. C. Payne Dep. 131: 11-15, Aug. 4, 2019. Again, Defendant is currently pursuing education for a career that would yield much lower earning capacity than her prior earning capacity as a senior claims adjustor. C. Payne Dep. 136: 9-23, Aug. 4, 2019.

11. **The decisions regarding employment, career, economics, education, and parenting arrangements made by the parties during the marriage and their effect on present and future earning potential, including the length of time one or both of the parties have been absent from the job market**

After the birth of their first daughter, the parties decided that Plaintiff would work to support the family financially while Defendant would stay home with the children. C. Payne Dep. 137: 5-10, Aug. 4, 2019. Prior to this time, Defendant worked as a senior claims adjustor. *Id.* at 136: 14-23. Although Defendant has been unemployed for some time, she testified that she was certified as a CPA in 1998. C. Payne Dep. 9:19-24, July 26, 2019.

12. **The extent to which either party has contributed to the attainment of education, training, career position or profession of the other party**

The Court incorporates its findings discussed above under Equitable Distribution and Spousal Support.

13. **Such other factors, including the tax consequences to each party and the circumstances and factors that contributed to the dissolution, specifically**

including any ground for divorce, as are necessary to consider the equities between the parties.

The Court incorporates its findings discussed above under Equitable Distribution and Spousal Support.

### SPOUSAL SUPPORT RULING

In examining the evidence, the Court is of the opinion that Defendant has secreted large sums of money during the course of the litigation. The Court believes that it is sufficient for meeting her needs for quite some time in the future. Plaintiff presented evidence that Defendant was not candid with the Court regarding her finances. For example, Defendant transferred money into various accounts and represented to the Court that she had only one checking account. C. Payne Dep. 37:8-21, 38:10-17, 39:7-21, 48:13-24, 70:3-16, July 26, 2019.

Further, Defendant failed to diligently seek employment because she testified that she was "extremely busy" and had not "had an opportunity." C. Payne Dep. 19:12-15. She also admitted that she had not prepared a resume with which to pursue employment despite having been separated from Plaintiff for 3 years. *Id.* at 20:2-4. However, Defendant testified that she has gone tanning between 100 and 150 days during the approximately 1,000 days since separation. C. Payne Dep. 96:12-23, Aug. 7, 2019. Defendant previously testified that out of approximately the 1,000 days since separation, she could not find time to compile a resume. C. Payne Dep. 20:13-17, July 26, 2019.

The Court therefore declines to grant spousal support at this time. However, the Court does grant Defendant a reservation of Spousal Support.

### ATTORNEY'S FEES RULING

"[An] award for attorney's fees in a divorce matter is left to the sound discretion of the trial court." *Rinaldi v. Rinaldi*, 53 Va. App. 61, 78 (2008). After consideration of factors, including reasonableness of services rendered and evidence of time expended by counsel, the Court grants Plaintiff's request for attorney's fees in the amount of $57,000.

### PREPARATION OF DECREE

The Court directs Mr. Goff, counsel for the Plaintiff to draft a Final Decree consistent with its ruling, forward the same to Mr. Paul for his endorsement, who will submit the fully endorsed decree to the Court within 30 days of the date of this letter.

Sincerely,

Hon. T.J. Hauler, Judge

## Payne v. Payne: Equitable Distribution

### Assets

| Real & Personal Property | | Value | Distribution |
|---|---|---|---|
| Personal Property | | $39,927.00 | To Wife |
| Gold & Silver Coins | | $10,070.00 | To Wife |
| **Accounts & Proceeds** | | | |
| Maddie's Account | | $6,921.29 | To Wife |
| Wells Fargo Account 0606 | | $1,300.58 | To Wife |
| Insurance Check | | $17,884.72 | To Wife |
| Wells Fargo W's Account | | $75,004.44 | To Wife |
| Gerdau 401(k) | | $182,787.68 | To Husband |
| | **Total Assets** | $333,895.71 | |
| | To Wife | $151,108.03 | |
| | To Husband | $182,787.68 | |

### Debts

| | | | |
|---|---|---|---|
| Citi Card | | ($8,699.98) | To Husband |
| Chase Card | | ($12,477.21) | To Husband |
| $11624.98 Deficiency on the Mortgage | | ($5,812.49) | To Husband |
| Wells Fargo Line of Credit | | ($2,952.14) | To Husband |
| | **Total Debt** | ($29,941.82) | To Husband |
| | To Wife | $0.00 | |
| | To Husband | ($29,941.82) | |

### Grand Total

| | | |
|---|---|---|
| To Husband | $152,845.86 | |
| To Wife | $151,108.03 | |

RECEIVED  02/05/2020 04:32PM  804668529
02/05/2020 16:41 FAX  8047089402

JAMES N. BOFF II    Jay C Paul

022/022