UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re: Cheryl Cibula Payne,            20-30524-KLP
      Debtor.                         Chapter 13

### MEMORANDUM OPINION

Debtor Cheryl Cibula Payne (the "Debtor") requested that the Court enter a Rule to Show Cause (the "Application") against respondents Thomas Clifford Payne, James M. Goff, II, ("Goff") and James M. Goff, II, P.C. ("Goff, P.C.") (collectively, the "Respondents") for their alleged violations of the automatic stay of § 362 of the Bankruptcy Code, 11 U.S.C. § 362 (hereinafter referred to as "§ 362"). In particular, the Debtor complained of the Respondents' continuation of a divorce proceeding in the Circuit Court of Chesterfield County, Virginia (the "State Court"), styled *Thomas Clifford Payne v. Cheryl Cibula Payne*, Case No: CL16-2435 (the "Divorce Case"). Respondent Thomas Payne filed his response to the Application, to which the Debtor replied. A hearing on the Application was held on April 15, 2020.

At the hearing on the Application, the parties presented argument. The Respondents did not contest, either at the hearing or in pleadings submitted to the Court, the Debtor's assertion that the Respondents had proceeded in the State Court with knowledge of the pendency of the Debtor's bankruptcy case, but rather set forth what they argued were the reasons why their actions did not fall within the prohibitions of § 362. At the conclusion of

1

the hearing, the Court announced that it would conduct an evidentiary hearing on the matter at a later date. On April 21, 2020, the Court issued its Order to Show Cause, directing the Respondents to appear on June 25, 2020, and "show cause why they should not be found to have violated the automatic stay of the Bankruptcy Code, 11 U.S.C. § 362, and why the Court should not impose sanctions therefor." ECF 33.

The scheduled June 25 evidentiary hearing (the "Show Cause Hearing") was continued to August 18, 2020. At the Show Cause Hearing, the Court heard the testimony of the Debtor and Respondent James M. Goff, II. After hearing testimony and admitting a number of exhibits into evidence, the Court took the matter under advisement. The Court directed the Debtor to submit documentation supporting her claim for attorney's fees.

Thereafter, on August 18, 2020, the Debtor filed her "Motion for Attorney's Fees" (the "Fee Motion"), seeking an award of $2,460 for fees "directly incurred in connection with the show cause proceeding," and an additional $840 for fees incurred in connection with the defense of a separate adversary proceeding (the "Adversary Proceeding"), for a total of $3300."[1] Respondents James M. Goff, II, and James M. Goff, II, P.C., filed their response to the Fee Motion[2] on August 26, 2020. The Court has carefully

---

[1] ECF 57. The Adversary Proceeding was filed by Respondents on May 5, 2020, Adv. Pro. 20-03037-KLP, seeking a determination that the Debtor's obligation to Thomas Payne incurred in the Divorce Case was a nondischargeable domestic support obligation. An order granting the Debtor's motion to dismiss the Adversary Proceeding was entered on August 31, 2020.
[2] ECF 60.

2

reviewed the pleadings, evidence and arguments of counsel submitted in this matter and makes the following Findings of Fact and Conclusions of Law.[3]

## Jurisdiction

The Court has jurisdiction in this matter pursuant to 28 U.S.C §§ 157(b)(1) and 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A,O).

## Findings of Fact

The Debtor filed a petition under chapter 13 (the "Petition") in this Court on January 31, 2020. At the time the Petition was filed and prior thereto, the Debtor's ex-husband Thomas Clifford Payne was represented by James M. Goff, II, and James M. Goff, II, P.C., in the Divorce Case. On January 15, 2020, prior to the January 31, 2020, filing of the Petition, the State Court entered a final decree in the Divorce Case.

In response to the Debtor's bankruptcy filing, on February 5, 2020, Thomas Clifford Payne, by James M. Goff, II, and James M. Goff, II, P.C., filed several documents in the Divorce Case, including a Motion to Stay (the "Stay Motion"), a Motion to Rehear and Reconsider (the "Motion to Rehear"), and an Amended Motion to Rehear and Reconsider ("the Amended Motion") (collectively, the "State Court Motions"). Respondents maintain that the purpose of the Stay Motion was to prevent the expiration of the State Court's jurisdiction due to the Debtor's bankruptcy and to address her alleged failure

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

3

to disclose the existence of a bank account during the divorce litigation. The stated purpose of the Motion to Rehear and the Amended Motion was to have the State Court rehear and reconsider issues of equitable distribution in light of the Debtor's bankruptcy filing. Respondents neither sought nor obtained stay relief from this Court prior to filing the State Court Motions.

At the Show Cause Hearing, the Debtor testified that the Respondents' post-bankruptcy actions in State Court caused her to suffer significant emotional distress. The Debtor had been under a great deal of stress for various reasons at the time the State Court Motions were filed. It is unclear from the record exactly how much the State Court Filings contributed to the distress that the Debtor was suffering. The Debtor's mother had died, her father had undergone surgery after a suffering a heart attack, she had two special needs children she was home-schooling, she had been going through a divorce, and she had just initiated bankruptcy proceedings. She had been prescribed medication and had received counseling. However, records submitted show that her medication regimen was commenced prior to the filing of the State Court Motions. She did not offer documentary evidence that supported any claim for expenses incurred for medical or psychological care directly as a result of the State Court Motions.

The Debtor incurred attorney's fees in the amount of $2460 in connection with these show cause proceedings. She incurred $840 in attorney's fees for services rendered in the Adversary Proceeding. The Debtor

was represented in the Divorce Case by attorney Jay Paul, and she paid him $90 for services rendered in connection with the State Court Motions.

### Conclusions of Law

*Liability*: § 362(a)(1) of the Bankruptcy Code prohibits:

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the [bankruptcy] case . . . .

11 U.S.C. § 362(a)(1). The law in the Fourth Circuit interpreting § 362 and a debtor's entitlement to damages from a creditor pursuant to that section is discussed fully in *In re Seaton*, 462 B.R. 582 (Bankr. E.D. Va. 2011). The test, as set forth in *Seaton*, is that to recover damages for the violation of the automatic stay, a debtor must prove that (1) the creditor committed an act that violated the stay, (2) the act was willful, and (3) the debtor suffered damages as a result. *Id.* at 591.

A willful violation occurs when the creditor knows or is charged with knowledge of the stay and commits an intentional act in violation of the stay. *Id.* at 592-93. A willful violation does not require a specific intent to violate the stay but only to deliberately undertake the act that violates the stay. *Scott v. Wells Fargo Home Mortg., Inc.*, 326 F. Supp. 2d 709, 718 (E.D. Va.), *aff'd sub nom. Scott v. Wells Fargo & Co.*, 67 F. App'x 238 (4th Cir. 2003). Willfulness in the context of § 362(k) must be demonstrated by clear and convincing evidence. *Skillforce, Inc., v. Hafer,* 509 B.R. 523, 529 (E.D. Va.

5

2014); *In re Sheets*, No. 12-31723-KLP, 2014 WL 4831339, at *3 (Bankr. E.D. Va. Sept. 29, 2014).

In light of the explicit language of § 362(a)(1) that specifically prohibits the "continuation . . . of a judicial . . . proceeding against the debtor that was or could have been commenced before the commencement of a case," it is difficult, if not impossible, to see how the Respondents could have legitimately believed that filing the Motion to Rehear in State Court for the purpose of enhancing a potential recovery against the debtor was not a violation of the automatic stay. A prudent party would feel compelled to respond to the State Court Motions, the exact concern that the automatic stay is designed to alleviate.[4]

By their own admission, Respondents continued to pursue the Divorce Case in the State Court despite their actual, direct knowledge of the Debtor's bankruptcy filing. The actions taken by Respondents were intentional and willful. Despite Respondents' contention that the actions were intended to preserve the status quo in State Court, the Court finds that Respondents' actions in filing the State Court Motions, particularly the Motion to Rehear and the Amended Motion, went beyond the preservation of the status quo and

---

[4] "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from its creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." *See* S. Rep. No. 95–989, 95th Cong., 2d Sess. 54–55 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5840–5841. *See also Budget Serv. Co. v. Better Homes of Va., Inc.,* 804 F.2d 289, 292 (4th Cir. 1986); *In re Banks*, 577 B.R. 659, 669 (Bankr. E.D. Va. 2017).

amounted to a prohibited continuation of a judicial action against the debtor that had been commenced against the Debtor before the Petition was filed or to recover a claim against the debtor that arose before the commencement of the case, thus violating § 362(a)(1).[5]

The Court notes that no evidence was offered by the Respondents to distinguish between the acts of Thomas Payne as opposed to those of Goff and

---

[5] The Court is cognizant of the Supreme Court's decision in *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019). In *Taggart*, the U.S. Supreme Court ruled that a bankruptcy court may hold a creditor in civil contempt for attempting to collect on a debt that has been discharged in bankruptcy "if there is no fair ground of doubt as to whether the [discharge] order barred the creditor's conduct." The Court did not address whether the same standard should apply to violations of the automatic stay, observing instead that "[t]he purposes of automatic stays and discharge orders . . . differ: A stay aims to prevent damaging disruptions to the administration of a bankruptcy case in the short run, whereas a discharge is entered at the end of the case and seeks to bind creditors over a much longer period." *Id.* at 1804. The court has found no decision in the Fourth Circuit that has imported the *Taggart* definition of willfulness into § 362.

A recent Ninth Circuit Bankruptcy Appellate Panel ("BAP") case applied the *Taggart* standard in upholding a bankruptcy court's order granting a chapter 7 trustee's request for contempt sanctions for a willful violation of the automatic stay. *Suh v. Anderson (In re Jeong)*, BAP No. CC-19-1244-STaF, 2020 WL 1277575 (B.A.P. 9th Cir. March 16, 2020). However, the BAP noted that the Ninth Circuit had previously held that the same contempt standards apply to both violations of the automatic stay and violations of the discharge injunction. *Id.* at *4 n.3. It is also worth noting that in *Jeong*, the remedy provided in § 362(k) was unavailable to the trustee, as the BAP specifically found that "[a] chapter 7 trustee, however, is not entitled to seek recovery under § 362(k). Instead, the trustee only can recover damages for stay violations under the bankruptcy court's civil contempt power." *Id.* at *7.

Regardless, this Court need not determine whether the *Taggart* standard should be adopted as the definition of "willful" as that term is used in § 362(k), because the Court finds that even if the *Taggart* standard is the proper one, there is "no fair ground of doubt" that the Respondents were acting in violation of the automatic stay. In so doing, the Court follows the example of *In re Franklin*, 614 B.R. 534 (Bankr. M.D.N.C. 2020). In *Franklin*, a chapter 13 case in which the debtor had requested § 362(k) sanctions, the bankruptcy court addressed *Taggart*, noting the distinction between the discharge injunction and the automatic stay but finding that "[e]ven if the standard in *Taggart* applied to § 362(k), no reasonable creditor objectively could have believed [the creditor's] actions in this case did not violate the automatic stay" and cautioning that "courts should not extrapolate from Supreme Court opinions in a manner that is inconsistent with settled circuit law." *Id.* at 546 n.19. *See also In re Skandis*, 621 Bankr. 218, 224 (Bankr. W.D. Mich. 2020) ("Whether *Taggart* applies in contexts other than contempt for violation of the discharge injunction and whether a change in existing Sixth Circuit law occurred as a result of *Taggart* are subject to some debate . . . . Regardless, the court is convinced that the Debtor is in contempt of court under both *Taggart* and pre-*Taggart* precedent in the Sixth Circuit." (citations omitted)).

7

Goff, PC. Nevertheless, it is clear that Goff, PC, and its principal, Goff, proceeded in State Court in direct violation of § 362(a)(1). That they were purportedly acting on behalf of Thomas Payne does not insulate them from liability for their own violations.[6] *See, e.g., Wohleber v. Skurko (In re Wohleber)*, 596 B.R. 554 (B.A.P. 6th Cir. 2019), *appeal dismissed* 833 F. App'x 634 (6th Cir. 2020) (no jurisdiction to decide interlocutory appeal); *Valentine v. Valentine (In re Valentine)*, 611 B.R. 622 (Bankr. E.D. Mo. 2020).

*Damages*:  Section 362(k)(1) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." Actual damages include those actually incurred by the debtor, *Skillforce,* 509 B.R. at 534. The injured debtor has the burden of proof to establish actual damages. *Seaton*, 462 B.R. at 595.

In this case, the Debtor has met the burden of proving damages with respect to her attorney's fees. She has submitted invoices, and it is irrefutable the Respondents' violation of the automatic stay caused the Debtor to seek the assistance of counsel and to incur the related fees.

---

[6] It is unclear from the record whether Thomas Payne, who neither testified nor personally appeared in these bankruptcy proceedings, was represented during the Court's August 2020 evidentiary hearing. Goff and Goff, PC, were represented by their own counsel; however, Goff's counsel did not purport to represent Mr. Payne. Goff, who has filed pleadings in this case on behalf of Mr. Payne, did not appear to participate as counsel to Mr. Payne but appeared solely as a Respondent. Nevertheless, the Court finds that Mr. Payne was properly served with notice of these proceedings and afforded an opportunity to be heard.

The Debtor has also asked for an award of damages for medical and counseling expenses. The causal connection between any medical and counseling expenses and the Respondents' violation of the automatic stay is not immediately apparent, as it appears from the evidence that the Debtor's counseling and medication courses were commenced prior to the filing of the Petition. There is no evidence as to whether the actions of the Respondents caused those courses to be extended. In addition, the medication and counseling evidence given to the Court revealed no financial cost to the Debtor for the period immediately following the stay violation, even upon specific questioning by the Court at the Show Cause Hearing. Pharmacy and counseling statements showed either no charge to the Debtor or were silent as to amounts paid by the Debtor. Thus, the Court cannot give an award for counseling and medical expenses, as the Debtor has failed to carry her burden of proving causation and of proving adequate evidence of damages.

The Court next addresses whether the Debtor is entitled to damages for emotional distress. This Court has previously had occasion to examine the issue of when damages should be awarded for emotional distress. In *Charity v. NC Fin. Sols. of Utah, LLC (In re Charity)*, Adv. Pro. 16-03121-KLP, 2017 WL 3580173 (Bankr. E.D. Va. Aug. 15, 2017), the Court imposed sanctions on a lender that had repeatedly violated the automatic stay. In addressing the issue of damages for emotional distress, the Court held:

> Although emotional distress is generally included as an available component of "actual damages" under § 362(k), courts are divided

9

over when it is appropriate to award emotional distress damages. This Court, in *In re The Original Barefoot Floors of America, Inc.,* 412 B.R. 769, 776–77 (Bankr. E.D. Va. 2008) and more recently in *In re Seaton,* 462 B.R. 582, 600–603 (Bankr. E.D. Va. 2011), after noting the absence of definitive precedent in the Fourth Circuit, examined cases decided by other circuit courts and the decisions of other courts within the Fourth Circuit before concluding that damages for emotional distress may be allowed under § 362(k)(1).

In *Seaton*, Judge St. John found that a number of courts, recognizing that emotional damages may be more easily manufactured than other types of damages, have held that emotional damage awards under § 362(k) must be supported by "specific information" rather than "generalized assertions." 462 B.R. at 601 (citing *Young v. Repine (In re Repine),* 536 F.3d 512, 521–22 (5th Cir. 2008); *Fleet Mortg. Grp., Inc. v. Kaneb,* 196 F.3d 265, 270 (1st Cir.1999)). Judge St. John held that the appropriate standard is that genuine emotional distress damages should be compensable, even in the absence of related financial loss, but only if the debtor can clearly establish that he suffered a significant harm and demonstrates a causal connection between the significant harm and the actions taken in violation of the stay. 462 B.R. at 603. This standard has been adopted by other circuits and is the standard that should be applied in the instant cases.

2017 WL 3580173, at *10.

The Court further notes the guidance given in *Seaton* as to what is required to establish damages for emotional distress. In *Seaton*, the court noted that there are various ways to establish significant emotional harm. "First, the person could offer corroborating medical evidence. Second, non-experts, such as family members, friends, or coworkers may testify to manifestations of mental anguish. Third, if the violator engaged in egregious conduct, the significant emotional distress may be readily apparent without corroborative

evidence . . . Fourth, even if the conduct is not egregious, the circumstances may make it obvious that a reasonable person would suffer significant emotional harm." *Seaton*, 462 B.R. at 602-03.

Here, the only evidence the Court has of emotional distress is the Debtor's unrebutted testimony that she in fact was substantially distressed. The Court finds that in this instance, the Debtor's testimony is sufficient to support an award for emotional distress. The Court was able to observe the demeanor of the Debtor during her testimony, and the distress was readily apparent. Considering the egregious actions of the Respondents in violating the automatic stay and continuing to insist that their conduct was proper, the testimony of the Debtor suffices to support an award for emotional distress. It is obvious that a reasonable person would have suffered significant emotional harm from the Respondents' action. The Debtor had understood that upon filing her bankruptcy case, litigation in the Divorce Case, for which she had already expended $100,000 in attorney's fees, would be at an end. The actions of the Respondents shattered that expectation, and she was distraught to discover that the Divorce Case was continuing. The Court will award the Debtor the sum of $1000 as compensation for emotional distress.

The remaining question is whether the Debtor is entitled to an award of punitive damages. The standard for an award of punitive damages is set forth in *In re Seaton*. "Relevant factors courts consider when determining whether punitive damages should be awarded include: (1) the nature of the

creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; and (4) any provocation by the debtor. *Id.* An award of punitive damages is often limited to those cases where there is egregious, intentional misconduct." 462 B.R. at 595 (citing *Rawles v. Wych (In re Rawles)*, Adv. No. 08-00555, 2009 WL 2924005, at *2 (Bankr. D. Md. June 18, 2009). *See also Edwards v. B & E Transport, LLC (In re Edwards)*, 607 B.R. 530, 538 (Bankr. W.D. Va. 2019) (awarding punitive damages when the creditor was informed that its conduct was in violation of the automatic stay but failed to correct its violation). The award of punitive damages lies within the discretion of the court. *See In re Nimitz*, Case No. 19-12741-BFK, 2019 WL 7580141, at *5 (Bankr. E.D. Va. Dec. 16, 2019); *Brown v. Pit Road Auto Service, (In re Brown)*, No. 07–30283–KRH, 2007 WL 2254664, at *3 (Bankr. E.D. Va. Aug. 3, 2007).

In this case, the behavior of the Respondents was in flagrant disregard of the automatic stay. Goff was aware of the stay but continued to act in the State Court. In the Amended Motion, the Respondents pled that "your Plaintiff's [sic] has a good faith belief that the bankruptcy filing . . . was initiated prior to entry of the Final Decree of divorce . . . in an effort to avoid the Court's balancing of the equities between the parties in this matter." The Amended Motion then went on to request a rehearing of the matters previously adjudicated in the State Court. This was done despite the inquiry of the State Court as to the effect of the Debtor's filing the bankruptcy case

and was in effect a request that the State Court ignore the bankruptcy filing and continue the Divorce Case against the Debtor. Even a superficial inquiry into the effect of the bankruptcy filing and the automatic stay would have revealed that continuation of the Divorce Case constituted a violation of the automatic stay. Instead, as late as the April 15, 2020, hearing on the Application for a rule to show cause, the Respondents continued to insist that filing the State Court Motions was proper, causing the Court to hold an evidentiary hearing that the Debtor was obliged to expend the effort and expense to prepare for. The Court cannot sanction these actions.

All the factors set forth in *Seaton* favor the Debtor. The Respondents' conduct was egregious and was motivated by the desire to enhance Mr. Payne's position in the Divorce Case, in defiance of the automatic stay. The evidence regarding the Respondents' ability to pay supports an award.[7] In addition, there is no evidence of provocation by the Debtor. Therefore, the Court will award punitive damages in the sum of $2,500.

The Court finds that the attorney's fees the Debtor incurred in connection with the impermissible State Court Filings are reasonable and related to the stay violation; however, the fees associated with the Adversary Proceeding are not compensable. The filing of the Adversary Proceeding did not violate the stay, and the Adversary Proceeding was filed in May 2020, well after the February 2020 State Court Filings. Therefore, the Court will

---

[7] Goff testified that his annual income was at least $350,000.

award damages against the Respondents jointly and severally in the total amount $6050, of which $90 is attributable to Mr. Paul's fees, $2460 is attributable to Mr. Wilson's fees, $1000 represents damages for emotional distress, and $2500 represents punitive damages. The Court views the Motion for Attorney's Fees to be the Debtor's submission of her attorney's fees, as requested by the Court at the Show Cause Hearing and considers the motion to be resolved by the relief granted herein and in the accompanying order.

      A separate order shall issue.

Signed: March 22, 2021

                                                /s/ Keith L. Phillips
                                  United States Bankruptcy Judge
                                  Entered on Docket: March 22, 2021

Copies to:

Cheryl Cibula Payne
7610 Courthouse Road
Prince George, VA 23875

James H. Wilson, Jr.
4860 Cox Road, Suite 200
Glen Allen, VA 23060

James M. Goff, II
James M. Goff, II, P.C.
10310 Memory Lane, Suite 2C
Post Office Box 313
Chesterfield, VA 23832